J-S20024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADY MONTANA LAUER | : | |
| | : | |
| Appellant | : | No. 1390 MDA 2024 |

Appeal from the Judgment of Sentence Entered May 9, 2024
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000924-2023

BEFORE: OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.: **FILED: JULY 23, 2025**

Brady Montana Lauer ("Lauer") appeals from the judgment of sentence imposed following his jury convictions of aggravated assault and simple assault.[1] We affirm.

Larry McClanahan (the "Victim"), approximately sixty-nine years old, rented a room in Lauer's parents' home; they were longtime friends. The Commonwealth charged Lauer, thirty years old, with, *inter alia*, the aggravated assault and simple assault of the Victim in June of 2023.

The charges proceeded to a jury trial on February 1, 2024. The Victim testified to all of the following: he was at the kitchen table with the parents. Lauer was outside the kitchen window, talking to his parents, and the Victim "interjected something," although the Victim could not remember what. N.T.,

---

[1] **See** 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1).

2/1/24, at 28. This "triggered" Lauer, who then walked up the ramp to the door of the home, and the Victim went to the door as well, hoping to "stop him before he gets through the door." *Id*.

The Victim testified:

[Lauer] came through the screen door, knocked the Victim into a recliner chair in the living room and struck the Victim numerous times on his head and face with closed fists. The Victim attempted to shield his head and face with his hands.

The Victim suffered a broken nose, four teeth were knocked out, one of which punctured the Victim's lip and the Victim's tongue was split. The Victim also suffered a broken finger which was permanently disfigured. After the assault, the Victim drove himself to the emergency room . . . . The Commonwealth presented numerous photographs outlining the injuries the Victim suffered.

Trial Court Opinion, 11/7/24, at 1-2.

Pertinently, the Commonwealth asked the Victim whether he "square[d] up in some kind of kung fu stance and challenge[d]" Lauer. *Id*. at 45. The Victim responded as follows: "I don't know. I don't fight. I'm not a fighter. I have no record of any fighting. Even in the Army , I didn't — I hate to watch people fight because somebody always gets hurt." *Id*. At this juncture, Lauer argued that the Victim's response "open[ed] the door to" evidence of the Victim's 1993 child abuse and assault charges. *Id*. The trial court disagreed, finding such evidence was about "different conduct," and the charges were more than thirty years old. *Id*. at 46.

Next, the Commonwealth called the Victim's neighbor, who testified to the following. He heard "yelling and screaming" and went to his back yard,

where he could see the front of Lauer's parents' home. N.T., 2/1/24, at 58. The neighbor observed Lauer walk up the ramp and open the door. The neighbor could also see the Victim "sitting at the door [*sic*] and [Lauer] was still . . . yelling and screaming."[2] *Id*. Lauer "literally jumped on [the Victim. The neighbor] assume[d] they fell because [he] couldn't see much after that." *Id*. The neighbor then observed the Victim come out of the house, with his "face full of blood," and drive away. *Id*. When asked if he saw Lauer "square up into a kung fu stance and challenge [Lauer] to a fight," the neighbor responded, "No. I just seen [the Victim] put his hand up for, like, trying to block the punches." *Id*. at 59.

Lauer testified in his own defense to all of the following. He was outside the home, arguing with his father about money. The Victim interjected with "something along the lines of . . . you need to do this[,] money-wise." N.T., 2/1/24, at 105. The Victim also told Lauer, "I'm not scared of you. I'll kick your f-ing ass." *Id*. Lauer was angry, said, "You're not going to threaten me in my parents' house," and walked up the ramp to the door. *Id*. When Lauer opened the door, the Victim was there "in a fighting stance, like [a] kung fu" stance. *Id*. at 106. Lauer testified:

> As soon as I stepped in and the door was almost completely closed, [the Victim] hit me [in the left side of] the face. And it was almost like, Okay. That was unexpected. I didn't even have

---

[2] The neighbor did not refer to the Victim by name, but called him "the old man." N.T., 2/1/24, at 58.

my hands up. I wasn't even ready, like, you know, fighting stance.

\* \* \* \*

[T]hat's when I put my hands for a defense position.

*Id*. at 106.

Lauer admitted he hit the Victim once, "pretty hard in his nose[ and] mouth area," and the Victim "stumbled back a little." *Id*. The Victim then "grabbed" Lauer's collar and twisted it, choking him. *Id*. at 106-07. They tripped over a chair, and the Victim hit his head on an end table, while still holding Lauer's collar. Lauer hit the Victim once more, and the Victim released him. Lauer went to the kitchen, and the Victim followed him and sat next to him. The Victim then said, "We're okay, bro. We're good." *Id*. at 108. Lauer asked the Victim why he hit him, and the Victim apologized. The Victim subsequently left in his car.

Lauer's counsel then attempted to ask Lauer about the Victim's statement made on direct examination, that the Victim did not fight or did not like to fight. The Commonwealth objected, but the trial court agreed with Lauer's argument that when the Victim testified he was not a fighter, he opened the door to rebuttal evidence pertaining to his character. *See id*. at 111. The trial court thus ruled Lauer could present "specific instances . . . to show that the [Victim] has fought in the past." *Id*. Lauer then testified, however, that on multiple occasions, the Victim brought "up his military background and how he can kick anyone's ass and he's [some] lethal weapon

. . . or something along those lines." *Id*. at 113. The trial court began to state this response went beyond its ruling, but defense counsel interjected that his examination of Lauer was complete. *Id*. (defense counsel stating, "We are done with him"). The trial court thus struck Lauer's testimony and instructed the jury it may not consider it. Lauer did not object.

Finally, we note that Lauer's mother and father also testified, corroborating Lauer's account of the events: that the Victim hit Lauer first, then hit his head on an end table.

The jury found Lauer guilty of aggravated assault and simple assault.[3]

On May 9, 2024, the trial court imposed a mitigated range sentence of thirty to sixty months' imprisonment on the aggravated assault conviction. Lauer filed a timely post-sentence motion, raising the two evidentiary issues he presently brings on appeal. The trial court denied the motion. Lauer filed a timely notice of appeal and he and the trial court complied with Pa.R.A.P. 1925.

Lauer presents two issues for our review:

1. Whether the trial court abused its discretion in not allowing the introduction of a 1993 Maryland charge of child abuse/battery, to rebut the assertion from the [V]ictim . . . that he has a peaceful character and is opposed to fighting.

---

[3] The jury found Lauer not guilty of a charge of terroristic threats. The jury also specifically found the Victim was sixty years of age or older, and Lauer was under age sixty at the time of the offense. This finding triggered a mandatory minimum sentence of two years' imprisonment under 42 Pa.C.S.A. § 9717 ("Sentences for offenses against elderly persons").

2. Whether the trial court abused its discretion in . . . striking the testimony of . . . Lauer concerning statements that the [V]ictim . . . had previously made to him that rebut [the Victim's] assertion that he has a peaceful character and is opposed to fighting.

Lauer's Brief at 6.

In his first issue, Lauer argues the trial court abused its discretion in excluding evidence of the Victim's 1993 Maryland charge of child abuse and battery. We consider the applicable standard of review:

> Admission of evidence . . . rests within the sound discretion of the trial court, which must balance evidentiary value against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury. We reaffirm our confidence in our trial judges to oversee the presentation of evidence so that overtly passionate, intentionally biased and inflammatory material is kept out of the courtroom. We will reverse a trial court's decision as to admissibility of evidence only if [Appellant] sustains the heavy burden to show that the trial court has abused its discretion.

*Commonwealth v. Christine*, 78 A.3d 1, 4 (Pa. Super. 2013) (*en banc*).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Generally, "[a]ll relevant evidence is admissible[.] Evidence that is not relevant is not admissible." Pa.R.E. 402. Nevertheless, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "[W]hen character or a character trait of an alleged victim is

admissible under Pa.R.E. 404(a)(2)(B) the defendant may prove the character or character trait by specific instances of conduct."[4]  Pa.R.E. 405(b)(2).

The Pennsylvania Supreme Court has stated:

[W]hen a defendant asserts a claim of self-defense:

> [E]vidence of the victim's prior **convictions** involving aggression may be admitted, if probative, either (1) to corroborate the defendant's alleged knowledge of the victim's violent character, to prove that the defendant was in reasonable fear of danger, or (2) as character/propensity evidence, as indirect evidence that the victim was in fact the aggressor.

> The defendant need not have knowledge of the victim's prior conviction if it is being offered to prove the victim was the aggressor.  [E]vidence of the victim's prior conviction is admissible *if the trial court determines it is "similar in nature and not too distant in time*."

***Commonwealth v. Christine***, 125 A.3d 394, 398-99 (Pa. 2015) (citations omitted and emphases added).

Finally, we note that a "litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise

---

[4] The general rule, set forth at Pennsylvania Rule of Evidence 405(b), states: "Specific instances of conduct are **not** admissible to prove character or a trait of character."  Pa.R.E. 405(b) (emphasis added).  However, Rule 405(b)(2) sets forth the exception, stated above.  **See also** Pa.R.E. 404(a)(2)(B) (stating that "subject to limitations imposed by statute a defendant may offer evidence of an alleged victim's pertinent trait"); **but see** Pa.R.E. 404(a)(1) (stating general rule that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait").

prohibited evidence." ***Commonwealth v. Nypaver***, 69 A.3d 708, 716 (Pa. Super. 2013).

On appeal, Lauer maintains the evidence — of the Victim's "1993 Maryland ***charge*** of child abuse and battery" — was admissible to rebut the Victim's testimony "that he has a peaceful character and no record of fighting." Lauer's Brief at 11 (emphasis added). Lauer avers the following testimony by the Victim opened the door: "I don't fight. I'm not a fighter. I have no record of fighting. . . . I hate to watch people fight because somebody always gets hurt." ***Id***. at 12-13. Lauer relies on ***Christine***, 125 A.3d 394, for the principle that when a defendant claims self-defense, evidence of the victim's prior ***convictions*** involving aggression is admissible as: (1) character evidence that the victim was the aggressor; or (2) evidence to corroborate the defendant's knowledge of the victim's violent character and thus to prove the defendant was in reasonable fear of danger. ***See id***. at 13. Lauer acknowledges the disposition of the Victim's charges is "unknown," and surmises the charges "presumably involve[d] some kind of assaultive behavior." ***Id***. at 11 n.1, 14.

The trial court denied Lauer's request to introduce the evidence, of the Victim's 1993 charges of child abuse and assault, on the grounds they involved "different conduct." N.T., 2/1/24, at 46. Second, the court reasoned that the conduct in this case would have differed from the conduct underlying the prior charges. The court considered that in this case, the Victim, age sixty-nine,

"was assaulted in [his own] residence by [Lauer, age thirty-one,] and was struck . . . numerous times in his head and face with closed fists. This case did not involve a charge of child abuse or an assault against a child." Trial Court Opinion, 11/7/24, at 6. Additionally, the court reasoned that charges were thirty years old. Finally, the court found that any probative value of the prior charges, especially "without any other information, including the alleged facts and why the charges did not result in conviction," was "outweighed by a danger of unfair prejudice to the Victim." **Id**. at 7.

After our review of the record, we determine the trial court did not abuse its discretion in excluding the evidence of the Victim's prior criminal charges. **See Christine**, 78 A.3d at 4. First, although Lauer cites the Rules of Evidence concerning relevance, he does not meaningfully dispute the trial court's reasoning that the facts of the instant matter would differ from those relating to the Victim's child abuse charges. Indeed, Lauer speculates, without further discussion, that the Victim's prior charges "presumably involve[d] some kind of assaultive behavior."[5] Lauer's Brief at 14. Additionally, Lauer ignores the

---

[5] In its opinion, the trial court further considered that the evidence consisted merely of **charges** against the Victim, and not a **conviction**. Trial Court Opinion, 11/7/24, at 5. On appeal, Lauer contends the court could have taken a recess for the Commonwealth to "provide further discovery about the outcome of the charge . . . or in the alternative, [allow] some kind of *in camera* questioning of [the Victim] about it." Lauer's Brief at 14. However, Lauer did not request either form of relief before the trial court, and thus he has waived this claim for our review. **See** Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on

*(Footnote Continued Next Page)*

trial court's finding that the prior charges were too remote in time to be relevant. *See Christine*, 125 A.3d at 398-99 (stating that "evidence of the victim's prior conviction is admissible if the trial court determines it is 'similar in nature and not too distant in time'"). In any event, we agree with the trial court's reasoning. Given the lack of persuasive argument, we determine no relief is due on Lauer's first issue.

In his second issue, Lauer argues the trial court abused its discretion in precluding him from testifying about statements the Victim previously made about fighting, which would have shown the Victim's violent nature. Lauer maintains this evidence would have also shown the Victim was the initial aggressor and would have supported the assertion of self-defense. Lauer cites Pennsylvania Rule of Evidence 404(b), which permits a defendant to "offer evidence of an alleged victim's pertinent trait." Pa.R.E 404(b). Lauer also argues that even if the statements were inadmissible, the Victim opened the door when he testified he did not fight and had no record of fighting. Lauer claims he had a right to rebut this false impression of the Victim's peaceful character with statements the Victim made directly to him.

By way of background, we reiterate that the trial court **agreed** with Lauer's argument, and ruled that Lauer could testify about "specific instances

_____

appeal"); *see also Commonwealth v. T.B.*, 232 A.3d 915, 922 (Pa. Super. 2020) (stating: (1) "Failure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal;" and (2) "a litigant may not raise a new theory for an objection made at trial in his appeal").

. . . to show that [the Victim] has fought in the past." N.T., 2/1/24, at 111. Defense counsel thus asked Lauer whether the Victim had ever said anything "contrary" to the Victim's trial testimony that he does not fight. *Id*. at 113. Lauer responded as follows, and the following exchange occurred:

> [Lauer:] More than one occasion, I mean, multiple occasions he brings up his military background and how he can kick anyone's ass and he's somebody — he's some , I guess, lethal weapon, you could say, or something along those lines.
>
> THE COURT: Approach.
>
> (Sidebar on the record.)
>
> THE COURT: I understand. [*sic*] That is different than him telling him I kicked peoples' ass. That's not —
>
> [Defense counsel:] We are done with him [*sic*].
>
> THE COURT: Okay .
>
> (Sidebar concluded . )
>
> THE COURT: Ladies and gentlemen, the last statement of [Lauer], the objection is sustained. The statement made is not admissible. You may not consider that[. T]hose are facts you may not consider in this case.

N.T., 2/1/24, at 113-14. We note Lauer did not object to this ruling.

On appeal, Lauer acknowledges the above exchange, and insists his response "clearly went towards not only the pertinent trait of whether [the Victim was] violent, but also [Lauer's] assertion of self-defense." Lauer's Brief at 16. We determine, however, that Lauer has waived this claim for failure to object to the trial court's striking the response given. The trial court found the response exceeded the trial court's initial ruling — that Lauer could testify

about "specific instances" of the Victim's prior fighting — and Lauer did not object. **See** Pa.R.A.P. 302(a); **see also Commonwealth v. Spone**, 305 A.3d 602, 612 (Pa. Super. 2023) (stating that "a party must make a timely and specific objection at trial in order to preserve an issue for appellate review"). Accordingly, no relief is due on Lauer's second issue.

As we conclude both of Lauer's evidentiary issues are meritless, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.


_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/23/2025